*895 Fuchsberg, J.
(dissenting). On this appeal, both parties and the amicus curiae[1] have exhaustively briefed and argued the issue of the appropriate standard for invocation of the antiretaliation provision of the Human Rights Law (Executive Law, § 296, subd 1, par [e]).[2] Meeting this question head on, I believe we now should hold that the statute makes it unlawful for an employer to discriminate against employees who oppose employment practices they reasonably believe to be discriminatory, and this though the practices in fact later are found to have been lawful. So deciding, the present case should be remitted to the State Division of Human Rights for a specific finding as to whether there was a reasonable basis for the employee’s belief that her employer was engaging in sex discrimination.
I respectfully suggest that it is neither fair nor wise for us to avoid reaching the underlying question, since the wording of the prior remittal by the Appellate Division to the board was cast in terms which did not focus on the legal question at the heart of this case. The court’s failure to do so, however jurisprudentially explained, sacrifices the claimant’s substantive rights to an intrajudicial procedural snare. Worse, I submit, it ill serves the strong anti-discriminatory policies the Human Rights Law was designed to advance (Executive Law, § 300).
The events which led to this proceeding had their beginning when Michele Cushing, who then had been a satisfactory member of Mohawk Finishing Products Corporation’s office staff for some six years, in response to a management request for employee questions or comments prepared and *896 presented a petition in which she and other female employees complained of what they perceived to be sex discrimination in hiring and work benefit practices. The central concern of their communication was that, of the 32 women and 8 men who constituted the office force, all the men were on salary but all except one of the women were on a less well-compensated hourly basis. Be that as it may, as the State Division of Human Rights was to find in a factual determination, which in due course the Human Rights Appeal Board sustained as supported by substantial evidence, within a day after the petition was delivered Ms. Cushing was “terminated because she opposed practices which she believed to be discriminatory”; on this basis it granted her relief, including compensatory damages for her loss of wages. This award the division made though, at the same time, it further found no evidence that the disparity in the terms of employment of the male and female office employees was gender based.
On reviewing the board’s order of affirmance, a divided Appellate Division, declaring the order “inconsistent and confusing” in that the appeal board found “the employer * * * did not discriminate against its female office workers” while the statute forbade termination for opposing “practices forbidden by the Human Rights Law”, annulled the determination and remitted the matter to the board “for the purpose of clarifying its findings of fact and decision” (70 AD2d 1016, app dsmd 48 NY2d 1027,[3] mot for lv to app den 49 NY2d 702). On this remand, the appeal board merely reaffirmed its position that the division’s determination had been supported by substantial evidence. Thereupon, the Appellate Division opined that only the second clause of section 296 (subd 1, par [e]), i.e., the one covering retaliation for actually having “filed a complaint, testified or assisted in any proceeding”, absolutely protects any individual (83 AD2d 970).
It is notable that the Appellate Division, neither in remanding nor in its ultimate decision, expressly indicated that it had given any consideration to the fact that the administrative decision may very well have been based on *897 a statutory construction under which, so long as a person who opposes a forbidden practice acts, even if mistakenly, in good faith and with a reasonable belief that the practice involved is unlawful, “absolute protection” is provided by the first clause as well. After all, it is the Human Rights Division to whose enforcement the Legislature committed the section. And the power of an agency so circumstanced to play an interpretative role, though not unlimited, is, of course, now an established principle of administrative law (Matter of Burger King v State Tax Comm., 51 NY2d 614, 620; Ostrer v Schenck, 41 NY2d 782, 786; Matter of Howard v Wyman, 28 NY2d 434, mot for rearg den 29 NY2d 749).
Such an interpretation would hardly have been an esoteric one. Rather, it would have been especially apt since, in construing the comparable language of the antiretaliation provision of the Civil Rights Act of 1964 (US Code, tit 42, § 2000e-3, subd [a]),[4] the model which guided New York’s draftsmen, Federal courts consistently have found that a “reasonable belief” reading of the first clause is in harmony with its purpose (e.g., Payne v McLemore’s Wholesale & Retail Stores, 654 F2d 1130, cert den 455 US 1000; Berg v La Crosse Cooler Co., 612 F2d 1041; Sias v City Demonstration Agency, 588 F2d 692; Hearth v Metropolitan Tr. Comm., 436 F Supp 685, 688; see, also, Albermarle Paper Co. v Moody, 422 US 405, 421).
Moreover, that such a holding may have been at the root of the administrative ruling, and so understood by the board, can have come as no surprise. Even if only implicit, it was obvious, at least after the board’s second affirmance. For the Appellate Division’s second order, the one before us now, was accompanied by an opinion which, distinguishing between the first and second clauses of the section and venturing the prediction that the court’s holding would not “frustrate the purposes behind the Human Rights Law” by “forc[ing] those employees who feel victimized by unlawful discrimination to act at their peril” (83 AD2d, p 971), in *898 effect, though not in so many words, goes on to meet the substantive issue we are now called upon to review. Indeed, realistically read, the Appellate Division’s decision clearly reflects a doctrinal difference with the position the Human Rights Division urges upon us.
Returning, therefore, to the substantive issue, it is difficult to quarrel with the proposition that a narrow and overly literal interpretation of the clause at issue would put an employee who makes informal objection to what appears to be discriminatory treatment at the risk that, if it turned out that the situation was misjudged, a reprisal would follow. The resulting chill on the making of complaints, no matter the genuineness of the beliefs which prompted their presentation, seems self-evident. And, surely, by restricting the statutory safeguard to cases in which a formal administrative complaint has been lodged, resolution by conference, mediation or other personal interplay is more likely to be discouraged than not. All this would be totally at odds with the manifest remedial nature of the Human Rights Law.
Accordingly, bearing in mind that whatever it may or may not have intended to do implicitly, the Human Rights Division made no explicit finding with regard to the genuineness and reasonableness of the complainant’s belief that discrimination existed, I would reverse the order of the Appellate Division and remit to the State Division of Human Rights for express determination of the reasonableness question.

. The amicus, The Equal Employment Opportunity Commission, is the Federal agency charged with the administration, interpretation and enforcement of the Federal laws prohibiting employment discrimination, including title VII of the Civil Rights Act of 1964, as amended (US Code, tit 42, § 2000e et seq.), the progenitor of our own Human Rights Law.

. Section 296 (subd 1, par [el) of the Executive Law makes it an unlawful practice “to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [the Human Rights Law] or because he has filed a complaint, testified or assisted in any proceeding under this article”. In addition to section 296 (subd 1, par |e]), which involves opposition to employment discrimination, other sections of the Human Rights Law have identical antiretaliation provisions, viz., section 296 (subd 3-a, par [cl) (age discrimination in employment) and subdivision 7 of section 296 (discrimination in housing accommodations).

. Our dismissal was for lack of finality.

. Section 704 (subd (al) of title VII (78 US Stat 257; US Code, tit 42, 8 2000e-3, subd [a]) provides, “It shall be an unlawful employment practice for an employer to discriminate * * * because [the employee! has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title”.